IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **INCAP SERVICE COMPANY,** * | |
|        **Plaintiff** * | |
| v. * | **Civil Action No. : CCB 04-CV-1592** |
| **THE COMMUNITY REINVESTMENT ACT** * | |
| **QUALIFIED INVESTMENT FUND,** *et al.* * | |
|        **Defendants** * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DENY DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12

Plaintiff InCap Service Company (hereinafter "InCap") submits this Memorandum of Law in opposition to Defendants Community Reinvestment Act Qualified Investment Fund (hereinafter "CRA Fund") and CRAFund Advisors, Inc. (hereinafter "CRA Advisor") motion to dismiss pursuant to Rule 12(b)(2), (3), (4), (5) & (6).

This Honorable Court, sitting in diversity, may validly exercise personal jurisdiction over both nonresident Defendants CRA Fund and CRA Advisor. Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(2) should be denied. During the period in question, Defendants consistently engaged in business in Maryland and held themselves out as such. Representatives of the Defendants met with InCap personnel in Maryland, sold securities to Maryland residents, managed assets for Maryland residents, charged fees to Maryland residents, paid bills rendered from Maryland and corresponded with

InCap personnel in Maryland. In that context, Defendants' reliance on the facts that (i) an agreement between the parties was executed in another state and (ii) Defendants had no office in Maryland falls far short of dispossessing this court of jurisdiction over this matter. This Court may exercise jurisdiction over nonresident Defendants, as provided in Maryland's long-arm statute. *Md. Cts. & Jud. Proc. Code Ann. § 6-103(b) (1995 Repl. Vol.).* Furthermore, extending jurisdiction over these Defendants in this matter does not come close to surpassing the limits on jurisdictional reach imposed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. To the contrary, it would be unfair to InCap and the State of Maryland to dismiss InCap's complaint after the Defendants conducted business in Maryland and with Maryland residents. That is especially true where, as here, the Defendants hold themselves out as operating on a nationwide basis and a contract between the parties expressly contemplates that courts outside of the state where the contract was entered into may have jurisdiction over the parties.

Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(3), (4) & (5) should also be denied. Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391(a)(1) & §1391(c). Service of process was sufficient because a summons – which was signed, sealed and issued by the clerk of the District Court of Maryland – was properly addressed to Defendants and sent to counsel for Defendants as stipulated in Fed. R. Civ. P. 4(b). Secondly, the necessary copies of the summons and complaint were sent together as set out in Rule 4(c)(1).

Finally, Defendants' motion to dismiss CRA Advisor pursuant to Rule 12(b)(6) should also be denied because CRA Advisor's actions and relationship with CRA Fund, as it relates to these proceedings, are part and parcel of the functioning of CRA Fund. CRA Fund has no employees, payroll, ability to pay bills, or office aside from CRA Advisor. As structured and designed by the Defendants,

CRA Fund has no capacity to operate on its own and must use the expertise, guidance and services provided by CRA Advisor for all of its activities, including all of the relevant activities in this case, including paying bills, communicating with InCap employees, meeting with InCap employees and soliciting the sales of securities in Maryland.

## STATEMENT OF FACTS

InCap, formerly Declaration Service Company, and CRA Fund entered into an Investment Company Services Agreement on June 1, 1999. See Investment Company Services Agreement, attached hereto as Exhibit B (the "Services Agreement"). InCap Group, Inc. purchased Declaration Service Company on October 31, 2001. On December 15, 2001, InCap Service Company, a subsidiary of InCap Group, Inc., was assigned all responsibility of the former Declaration Service Company under the Services Agreement and became the new Administrator to CRA Fund. Thereafter, InCap provided fund administration, fund accounting, shareholder servicing, distribution and transfer agency services to the Defendants until the Defendants terminated the business relationship between themselves and InCap in 2003.

On May 20, 2004, InCap filed suit against the Defendants in the United States District Court for the District of Maryland, alleging breach of the Services Agreement. CRA Fund breached the Services Agreement by failing to compensate InCap for services provided to the Defendants. InCap attempted to negotiate payment with Defendants and Defendants' counsel multiple times over the past nine months. Affidavit of F. James Tennies, dated July 3, 2004, attached hereto as Exhibit A, at ¶ 7. Despite the fact that representatives of the Defendants have previously acknowledged financial responsibility under the Services Agreement, Tennies Affidavit, at ¶ 6, Defendants did not make an

attempt to reach a negotiated agreement.  On May 20, 2004, InCap notified Mary E. Kohart, Defendants' lead counsel, located in Philadelphia, that InCap had instituted suit against Defendants in the District of Maryland.  Ms. Kohart requested that InCap send a courtesy copy of the complaint to her for review, which InCap obliged willingly and without objection.  Tennies Affidavit, at ¶ 3.

Defendants assert that this Court may not exercise general jurisdiction over them and that their conduct within, and with regard to, Maryland is not sufficiently continuous or systematic for a Maryland court to exercise personal jurisdiction over them.  Defendants' Motion to Dismiss, pp. 2-3.   In fact, this Court has general jurisdiction over Defendants due to Defendants' business transactions and contacts with Maryland residents, including Plaintiff.

## ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION

**A. Plaintiff's Cause Of Action Against Defendants Is Within the Scope of Maryland's Long Arm Statute.**

Courts in Maryland may exercise personal jurisdiction over a nonresident business enterprise, such as Defendants, provided the State's long arm statute confers such jurisdiction. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993).  The Maryland long arm statute confers such jurisdiction because it provides that a court may exercise personal jurisdiction over a person who, directly or by an agent, transacts any business or performs any character of work or service in the State. *Md. Cts. & Jud. Proc. Code Ann.§ 6-103(b)(1) (1995 Repl. Vol.).*

According to CRA Fund's publicly available website, CRA Fund actively participates in the distribution and sale of mutual fund shares to Maryland residents and currently has a substantial list of Maryland-resident investors.  Secondly, and in direct relation to InCap's breach of contract claim against

4

CRA Fund, Neil Solomon former President of CRA Fund, met with F. James Tennies at InCap's headquarters in Baltimore, Maryland to discuss business relations between the two companies. Tennies Affidavit, at ¶ 4. Finally, all correspondence, including payment for fees, between CRA Fund management and InCap was sent to InCap's headquarters in Baltimore, Maryland. Tennies Affidavit, at ¶ 8. Thus, it is clear that CRA Fund is transacting business with InCap in Maryland as well as with Maryland residents, and thereby submitting to this Court's jurisdiction.

In their Motion to Dismiss, the Defendants contend that "any allegation of general jurisdiction would be without merit," and further argue that Defendants have no place of business in Maryland, conduct no continuous or systematic business in Maryland and that activity in Maryland in relation to the sale of securities is sporadic. Defendants' claims that (i) sporadic sales of securities are insufficient contacts with Maryland and (ii) that they have no active business in Maryland are baseless. Defendants hold themselves out as selling products to Maryland residents, listing numerous Maryland-based residents as clients. Defendants currently have, and in the past have had, clients in Maryland. Literally every day of the year, Defendants charge fees to Maryland residents, manage assets for Maryland residents and offer to sell securities to Maryland residents, making Defendants' contacts with Maryland more than sporadic.

Even if the Defendants could validly assert that they have only sporadic business contacts with Maryland, that position would not provide them the result they seek. Courts have made a distinction between "doing business" and "transacting business." Even if the Defendants' actions here did not rise to the level of "doing business" in Maryland, courts can and do exercise jurisdiction if a party engages in activities that meet the lower standard of "transacting business" in Maryland. The reason for this is to effectuate the underlying purposes of the Maryland long arm statute by not allowing business enterprises to conduct business transactions in Maryland and then stiff-arm Maryland residents seeking recompense

with the assertion that Maryland courts do not have jurisdiction over such business enterprises. *Prince v. Illien Adoptions International, LTD*, 806 F. Supp. 1225, 1228-29 (D. Md. 1992); *Snyder v. Hampton Industries, Inc.*, 521 F. Supp. 130, 137 (D. Md. 1981). Specifically, in *Snyder*, this Court exercised jurisdiction over a North Carolina defendant who expected his products to enter Maryland, despite the fact that defendant had never entered the State, had no license to do business in Maryland, nor had any assets, accounts, offices or telephone listing in Maryland. 521 F. Supp. at 147. Similarly, the Defendants here expect to (and indeed do) deliver their securities products to Maryland residents who purchase such securities. On a daily basis, Defendants manage assets for Maryland residents and charge fees to Maryland residents. And, unlike *Snyder*, senior officers of the Defendants visit Maryland to transact business.

Finally, the Maryland Court of Special Appeals has held that a nonresident defendant will be deemed to have "transacted business" in Maryland within the meaning of subsection (b)(1) of the Maryland long arm statute even if the nonresident defendant never physically enters Maryland personally or through an agent, as long as one or more of its actions culminate in "purposeful activity" within the State. *Sleph v. Radtke*, 76 Md. App. 418 (1988), <u>cert denied</u>, 314 Md. 193 (1988) (the fact that the nonresident defendant executed a transaction in Maryland as part of an investment subjects the nonresident defendant to long-arm jurisdiction). In meeting with InCap personnel in Maryland, in corresponding with InCap personnel in Maryland, in paying bills rendered from Maryland, and in selling securities to Maryland residents – each over a multi-year period – Defendants have gone far beyond the limited actions needed to purposely avail themselves of commerce in Maryland, and thus subjecting themselves to the jurisdiction of the Maryland courts. For them to assert otherwise is an offense to reason and to this Court.

When a court is adjudicating a motion for dismissal for lack of personal jurisdiction, a plaintiff need only prove a prima facie case, with all reasonable inferences being resolved in the plaintiff's favor. *Hardnett v. Duquesne University*, 897 F. Supp. 920, 921-22 (D. Md. 1995). All facts and reasonable inferences point to Defendants' having availed themselves of commerce in Maryland and being subject to personal jurisdiction in Maryland. With the facts here, one need not make many inferences favorable to the Plaintiff to conclude that this matter should not be dismissed. In fact, it can readily be inferred that the Defendants have taken many purposeful steps to maintain contacts with Maryland and to transact business in Maryland and with Maryland residents, including the Plaintiff. Therefore, Defendants need not have a place of business in Maryland or own property in Maryland for Maryland courts to have jurisdiction. Those are but red herrings.

The facts remain that the Defendants have in the past and continue to actively transact business in Maryland as well as purposefully to avail themselves of Maryland residents and businesses through the sale of securities to Maryland residents. Defendants' claim that they have no connection to Maryland rings hollow when Defendants earn and collect fees on a daily basis from Maryland residents and have done so for years, manage assets for Maryland residents, meet with Maryland residents in Maryland and negotiate business deals in Maryland. Jurisdiction is not a one-way street, allowing Defendants to operate in this state when collecting fees and conducting business but blithely opting out of the court system when fees are due from them. Many people and businesses would like such an arrangement. Our system of laws does not permit it.

## B. **Plaintiff's Cause Of Action Against Defendants Does Not Interfere With Defendants' Due Process Rights Under The Fourteenth Amendment.**

The Due Process Clause does not limit the exercise of personal jurisdiction over these Defendants by this Honorable Court because Defendants have established requisite minimum contacts with Maryland. Due process requires, in order to subject a non-resident defendant to a judgment, *in personam,* that the defendant must have certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Defendants have established minimum contacts well beyond those needed for this Court to exercise general jurisdiction. A court may exercise judicial power over a non-resident defendant by finding "continuous and systematic" contacts and thereby exercise general jurisdiction. *The Christian Science Board of Directors of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Defendants have maintained "continuous and systematic" contacts with Maryland by purposely availing themselves of business relationships in Maryland, including with Plaintiff and other residents of Maryland, by maintaining contacts with purchasers of their securities in Maryland, by charging fees to Maryland residents and by making available a public website which touts sales to Maryland residents and which contains telephone numbers and e-mail addresses for the purpose of obtaining information about Defendants for, inter alia, the purpose of soliciting sales in Maryland. The touchstone of the minimum contacts analysis is that a non-resident defendant has engaged in activities that are directed towards the forum state. *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994). Defendants' marketing and solicitation activities within Maryland are particular, deliberate and

calculated.  It is not the case that Defendants have sold securities products that have arbitrarily or randomly come into the hands of Maryland residents.  Rather, Defendants sales practices are initiated specifically so as to reach Maryland residents, for example by noting that other Maryland residents have purchased securities from the Defendants.  Defendants approve each sale of securities on an individual basis, including those to Maryland residents.  In *Lesnick,* the Court of Appeals test to consider the reach of personal jurisdiction involved (1) the defendants' substantial connection with the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state as well as (2) not offending fair play and substantial justice, taking into account the burden on defendants and interests of the forum state in furthering social policies.  *Id*.

Due Process requires that there be some act by which a defendant purposely avails itself of the privileges of conducting activities within a forum State, thus invoking the protections of its laws.  *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976).  Defendants' conduct and expectation from doing business with a company in Maryland and marketing and selling products to Maryland residents makes its reasonable that it will be subject to the Maryland courts.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Requiring a nonresident defendant to defend a lawsuit in Maryland based on a Maryland plaintiff's claim that is directly related to Defendants' contract with that Plaintiff would not offend the Due Process Clause.  *Prince*, 806 F. Supp. at 1231.  Furthermore, although the contract between InCap and Defendants was originally executed in Pennsylvania, Defendants have met with clients, prospects and representatives of InCap in Maryland and directed pertinent correspondence regarding the Services Agreement with InCap, to Plaintiff's Baltimore, Maryland headquarters.  Tennies Affidavit at ¶¶ 4, 5 and 8.

Finally, InCap's suit in this Honorable Court in no way presents a burden on Defendants. Defendants are managed by sophisticated financial professionals who have availed themselves of business in a majority of the United States, according to Defendants' website. Exercising personal jurisdiction over Defendants is in the best interests of Maryland so as to be able to protect its resident citizens and domestic corporations from willful breaches of contract by non-resident defendants. It is further in the best interests of this state for this Honorable Court to exercise jurisdiction so as to promote this effort and any other Maryland plaintiff's efforts in future contractual negotiations with non-resident parties, without fear that a breaching party can rebuff jurisdiction in the offended party's home state.

The contract between InCap and CRA Fund specifically stipulates that any Federal court with personal jurisdiction is an appropriate venue for any action arising under the Services Agreement, a clause specifically negotiated by the Defendants. See Exhibit B, Section 19. Therefore, based on Defendants' regular contacts with Maryland, it is evident that personal jurisdiction exists so that this Court has jurisdiction over Defendants. Such a conclusion is entirely consistent with the Services Agreement between the parties. Secondly, defendants have breached the contract between the parties in failing to make payment. Thus, it would be unfair and overly burdensome to require InCap, the non-breaching party, to file suit in another jurisdiction.

**C. Defendants' Motion To Dismiss For Improper Venue Is Deficient And Should Be Denied.**

Plaintiff's choice of venue is proper pursuant to 28 U.S.C. §1391(a)(1) and §1391(c). Defendants contend they do not reside in Maryland and therefore even if personal jurisdiction is proper, venue would be improper. Defendants' Motion to Dismiss, pp. 7-8. In fact, it is Defendants' claim that

venue is lacking that itself is deficient. For one, a civil action founded on diversity of citizenship, such as the one between these parties, may, except as otherwise provided by law, be brought in a judicial district where any defendant resides, if all defendants reside in the same State. *§1391(a)(1)*. In defining residency, the statute provides that for purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *§1391(c)*. Here, both Defendants are subject to personal jurisdiction in Maryland by actively transacting business in Maryland and, although not citizens of Maryland, the Defendants are considered residents of Maryland for purposes of the venue statute due to their substantial contacts with the state. The effect of §1391(c) was to broaden the general venue requirements for actions against business enterprises, to bring venue law in line with multi-state business operations, and to provide a forum in a judicial district where a business enterprise transacts business. *Pure Oil Co. v. Suarez*, 384 U.S. 202, 204 (1966) (even though a corporate defendant's main office was in another state, venue was proper in the district in which the corporate defendant was transacting business).

**D. Defendants' Motion To Dismiss For Insufficiency Of Process And Insufficiency Of Service Of Process Should Be Denied.**

Process and service of process upon Defendants was sufficient and Defendants' motion under Rule 12(b)(4) & 12(b)(5) should be denied. Defendants claim that process was deficient because Plaintiff sent only a copy of the complaint without the summons. Defendants' Motion to Dismiss, p. 8, n. 4. In point of fact, Plaintiff sent a courtesy copy several days prior to sending out the complaint and summons together, as requested by Defendants' counsel. Tennies Affadavit, ¶ 3. Defendants' attempt

to dismiss for insufficient process is an attempt to take advantage of InCap's common courtesy, which, in any event, had been expressly requested by Defendants' counsel and agreed to by Plaintiff's counsel. InCap promptly notified Mary E. Kohart, Defendant's counsel in Philadelphia, that a suit had been instituted against Defendants after Defendants' counsel had rebuffed attempts at negotiation. Tennies Affidavit, ¶¶ 3, 7. Ms. Kohart then requested that InCap send a copy for her review, a courtesy that InCap extended to Ms. Kohart. Tennies Affadavit, ¶ 3. InCap also relayed to Ms. Kohart that this was not an attempt at service and merely an effort to extend courtesy by sending the preliminary copy. Tennies Affidavit, ¶ 3. It is ridiculous, after that series of events, for Defendants' counsel to now claim that service was deficient.

Secondly, the manner of service of process was sufficient because InCap sent both the summons and complaint to Defendants' counsel by certified mail, return receipt requested. Tennies Affidavit, ¶ 9. Service complies with Maryland's long arm statute and the State's ability to exercise jurisdiction over Defendants is in compliance with the Due Process Clause. *Geelhoed v. Jensen*, 277 Md. 220, 224, 352 A.2d 818, 821 (1976).

For the foregoing reasons, plaintiff InCap Service Company respectfully requests that this Honorable Court deny Defendants' motion to dismiss under Fed. Rule Civ. P. 12(b)(1), (2), (3), (4), (5) & (6).

Respectfully Submitted,

/s/ F. James Tennies
_____

Date: July 5, 2004                                F. James Tennies

Attorney for Plaintiff

InCap Service Company
320 North Charles Street
Baltimore, Maryland 21201
410.727.2100
410.727.2106
Bar Number: 27455

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of July, 2004, a copy of the foregoing Motion To Deny Defendants' Motion to Dismiss Pursuant to Rule 12 and Memorandum of Law with attached exhibits was mailed first class, postage prepaid to:

Mary E. Kohart
Drinker Biddle & Reath LLP
One Logan Square
18th and Cherry Streets
Philadelphia, Pennsylvania 19103

Michael J. McManus
Drinker Biddle & Reath LLP
1500 K Street, N.W.
Washington, D.C. 20005-1209

Attorneys for Defendants

/s/ F. James Tennies
_____
F. James Tennies
Attorney for Plaintiff